Law Offices of Vincent S. Wong
39 East Broadway, Suite 306
New York, NY 10002
T: (212) 349-6099
F: (212) 349-6599
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
DANIEL MOY, INDIVIDUALLY, AS EXECUTOR
OF THE ESTATE OF KAM KIU MOY, AND ON             Civil Action No.
BEHALF OF ALL OTHER PLAINTIFFS SIMILARLY
SITUATED,

                                Plaintiff,

                  -against-                                **COMPLAINT**

SOUTHBRIDGE TOWERS, INC., WALLACE
DIMSON, BETSY NEBEL-SCHAINHOLZ, RONALD
GUGGENHEIM, JARED BROWN, JOHN OST, PAUL
KEFER, PRC MANAGEMENT CORPORATION; PRC
MANAGEMENT COMPANY LLC;18

                            Defendants.
------------------------------------------------------------------x

      The Plaintiff, DANIEL MOY, as Executor of the Estate of KAM KIU MOY, by

their undersigned attorneys, the Law Offices of Vincent S. Wong, as and for their

Complaint herein, respectfully show and allege:

### INTRODUCTION

     **1.**     This case presents issues pertaining to a shareholder's right to participate in

a cooperative offering plan which is the VOLUNTARY PLAN OF DISSOLUTION AND

RECONSTITUTION FOR SOUTHBRIDGE TOWERS, INC. that was accepted for filing

by the New York State Department of Law's Real Estate Financing Bureau on or about

April 10, 2014 (the "Plan").

2.     Because of recent events that appear contrary to, and to be part of a concerted effort to undermine, a shareholder's right to participate in the Plan, this action seeks, among other claims and requests for relief, a declaratory judgment, pursuant to CPLR § 3001, regarding the shareholder's rights to participate in Southbridge Towers, Inc.'s Plan of Dissolution and Reconstitution in accordance with the Plan's terms and procedures.

## JURISDICTION

3.     This action seeks triple damages for breaches of 42 USC 1983

4.     This Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

5.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because it is the judicial district in which the Defendants reside.

6.     Upon information and belief, there are at least several stockholders that have been damaged by defendants' violations of the discrimination acts which will result, if not already resulted, in millions of dollars in profits by the illegal acts of the defendants.

7.     Upon information and belief, the initial plaintiff in this case is only one of the several aggrieved parties and discovery is necessary and appropriate for the plaintiff's allegations and causes of actions to be fully litigated.

## PARTIES

*[ THE PLAINTIFF ]*

8.     Decedent Kam Kiu Moy, at the time of her death on March 11, 2015, was a

resident of the State, City and County of New York.

9.      Decedent Kam Kiu Moy, at all times material hereto and for more than thirty
(30) years until the date of her death, resided in Apartment 16M (the "Apartment") at 100
Beekman Street, New York, NY 10038 (the "Building").

10.     Decedent Kam Kiu Moy's Last Will and Testament was admitted to probate
in the Surrogate's Court for the State of New York – New York County, and Letters
Testamentary were initially issued to plaintiff DANIEL MOY by the Surrogate's Court –
New York County on April 25, 2017.

11.     As Executor of the Estate of Kam Kiu Moy, plaintiff DANIEL MOY owes
certain fiduciary obligations to the Estate, to the Surrogate's Court and other interested
parties, including responsibility for collecting, marshaling and distributing its assets.

12.     Among the assets of the Estate of Kam Kiu Moy are 26¼ shares of
Southbridge Towers, Inc. and the appurtenant interests in the Apartment.

13.     Daniel Moy is the sole heir to the Estate of Kam Kiu Moy as the only child
of Ms. Kam Kiu Moy.

14.     Mr. Moy is currently living in Florida for health reasons and has resided in
the Apartment as his primary residence.

15.     Throughout the years, Mr. Moy's job required Mr. Moy to travel around the
United States and at times the world, but Mr. Moy has always called and maintained the
Apartment as his primary residence.

16.     Mr. Moy knows and is well-known by many of the neighbors of the
Apartment in the Southbridge community and residences.

*[ THE DEFENDANTS ]*

17.    Defendant SOUTHBRIDGE TOWERS, INC. ("SBI") is a corporation initially organized under the Limited-Profit Housing Corporation Law of the State of New York and/or the New York Private Housing Finance Law.

18.    According to certain records of the defendants, defendant SBI was formed on or about September 13, 1967.

19.    According to current records of the New York State Department of State, defendant SBI was formed on or about January 23, 1968.

20.    According to the records of the City of New York, on or about July 19, 1968 defendant SBI took title to approximately nine buildings located in lower Manhattan which, as a group, comprise the Southbridge Towers complex (the "Southbridge Towers Complex") which has approximately 1650 housing units or apartments.

21.    From the inception of its operation of the various buildings within the Southbridge Towers Complex, defendant SBI has qualified and existed as a housing cooperative under the New York Private Housing Finance Law.

22.    The Building in which the Apartment is located is one of the buildings in the Southbridge Towers Complex.

23.    The group of residential housing buildings owned by defendant SBI have been (since about 1970) and are, as a group, operated under the New York Private Housing Finance Law as a special type of housing cooperative within the Mitchell-Lama Program, which is subject to various governing documents and applicable state laws; but in accordance with, and as permitted by, applicable NYS law and procedures, in 2007

defendant SBI's shareholders voted to pursue a course of privatization.

24.     Upon information and belief, defendant WALLACE DIMSON is a resident of the State, City and County of New York.

25.     Defendant WALLACE DIMSON resides in one of the buildings that are part of the Southbridge Towers Complex.

26.     Defendant WALLACE DIMSON resides at 80 Beekman Street, New York, New York.

27.     Defendant WALLACE DIMSON is a shareholder of Southbridge Towers, Inc.

28.     Defendant WALLACE DIMSON is a director of Southbridge Towers, Inc.

29.     Defendant WALLACE DIMSON is the President of Southbridge Towers, Inc.

30.     Upon information and belief, defendant BETSY NEBELSCHAINHOLZ is a resident of the State, City and County of New York.

31.     Defendant BETSY NEBEL-SCHAINHOLZ resides in one of the buildings that are part of the Southbridge Towers Complex.

32.     Defendant BETSY NEBEL-SCHAINHOLZ resides at 100 Beekman Street, New York, New York.

33.     Defendant BETSY NEBEL-SCHAINHOLZ is a shareholder of Southbridge Towers, Inc.

34.     Defendant BETSY NEBEL-SCHAINHOLZ is a director of Southbridge Towers, Inc.

35.     Defendant BETSY NEBEL-SCHAINHOLZ is the Vice-President of Southbridge Towers, Inc.

36.     Upon information and belief, defendant RONALD GUGGENHEIM is a resident of the State, City and County of New York.

37.     Defendant RONALD GUGGENHEIM resides in one of the buildings that are part of the Southbridge Towers Complex.

38.     Defendant RONALD GUGGENHEIM resides at 90 Gold Street, New York, New York.

39.     Defendant RONALD GUGGENHEIM is a shareholder of Southbridge Towers, Inc.

40.     Defendant RONALD GUGGENHEIM is a director of Southbridge Towers, Inc.

41.     Defendant RONALD GUGGENHEIM is the Treasurer of Southbridge Towers, Inc.

42.     Upon information and belief, defendant JARED BROWN is a resident of the State, City and County of New York.

43.     Defendant JARED BROWN resides in one of the buildings that are part of the Southbridge Towers Complex.

44.     Defendant JARED BROWN resides at 333 Pearl Street, New York, New York.

45.     Defendant JARED BROWN is a shareholder of Southbridge Towers, Inc.

46.     Defendant JARED BROWN is a director of Southbridge Towers, Inc.

**47.**     Defendant JARED BROWN is the Secretary of Southbridge Towers, Inc.

**48.**     Upon information and belief, defendant JOHN OST is a resident of the State, City and County of New York.

**49.**     Defendant JOHN OST resides in one of the buildings that are part of the Southbridge Towers Complex.

**50.**     Defendant JOHN OST resides at 333 Pearl Street, New York, New York.

**51.**     Defendant JOHN OST is a shareholder of Southbridge Towers, Inc.

**52.**     Defendant JOHN OST is a director of Southbridge Towers, Inc.

**53.**     Defendant JOHN OST is the Assistant Secretary of Southbridge Towers, Inc.

**54.**     Upon information and belief, defendant PAUL KEFER is a resident of the State, City and County of New York.

**55.**     Defendant PAUL KEFER resides in one of the buildings that are part of the Southbridge Towers Complex.

**56.**     Defendant PAUL KEFER resides at 90 Beekman Street, New York, New York.

**57.**     Defendant PAUL KEFER is a shareholder of Southbridge Towers, Inc.

**58.**     Defendant PAUL KEFER is a director of Southbridge Towers, Inc.

**59.**     Defendant PAUL KEFER is the Assistant Treasurer of Southbridge Towers, Inc.

**60.**     Defendant PRC MANAGEMENT CORPORATION ("PRC CORP.") is a Delaware corporation that is licensed to do business in the State of New York, with offices

located at 240 Madison Avenue, New York, New York.

**61.**     Defendant PRC MANAGEMENT COMPANY LLC ("PRC LLC") is a

Delaware limited liability company licensed to do business in the State of New York, with

offices located at 240 Madison Avenue, New York, New York..

### ADDITIONAL FACTS REGARDING 1983 ACT

**62.**     Defendant Southbridge was organized and registered with the Dept. of State

Jan. 23, 1968, pursuant to the provisions of the Limited-Profit Corporation Law of New

York State.

**63.**     On or about Jul. 19, 1968 Defendant Southbridge took title to approximately

nine buildings located in Lower Manhattan (New York, NY) which are presently known, as

a group, by the name "Southbridge Towers."

**64.**     The Defendant's multiple buildings contain approximately 1650 housing

units (apartments.)

**65.**     Defendant Southbridge owned and operated the foregoing Units, 1968-2007,

as a housing co-operative subject to the New York Private Housing Finance Law and more

colloquially known as "Mitchell-Lama" apartments.

**66.**     During or shortly after the Year 2007, the Units owned and operated by

Southbridge as "Mitchell-Lama" apartments, became eligible or imminently eligible for

conversion to private housing co-operative units.

**67.**     In the Year 2007 the Shareholders of Southbridge held a vote to approve,

and approved, conversion of the "Mitchell-Lama" Units owned by Southbridge to private

housing co-operative units.

68.     The Defendants named in this action, from 2007-2016, were and continue to be responsible for implementing the conversion approved by vote in 2007, Defendant Gutman, Mintz as Attorneys appointed or retained by the Co-Defendants for that purpose, Defendant PRC as the Management Agency hired or retained by the Co-Defendants for that purpose.

69.     Kam Kiu Moy (hereafter "Ms. Moy") was, at all times relevant, a Shareholder of Defendant Southbridge and the tenant in lawful possession of the Apartment at Southbridge's building located at 100 Beekman St.

70.     Ms. Moy had been a Shareholder of same and the tenant in lawful possession of same for multiple decades prior to 2007.

71.     Ms. Moy, on June 15, 2000, for elder care-planning purposes, appointed the Plaintiff, Daniel Moy, to be her Attorney in Fact.

72.     Ms. Moy, along with literally hundreds of other Shareholder-Tenants in the Defendants' buildings at "Southbridge Towers," was a senior citizen.

73.     The Defendants had actual and constructive knowledge, in 2007-2015, that Ms. Moy, along with literally hundreds of other Shareholder-Tenants in their buildings, were senior citizens.

74.     The Defendants represented to Ms. Moy, as well as other Shareholder-Tenants living generally at "Southbridge Towers" and specifically to elderly Shareholder-Tenants living at "Southbridge Towers," that their approval of a proposed conversion of the Defendants' Units from "Mitchell-Lama" apartments to private co-operative apartments would be to their personal economic benefit during their lifetimes and would be to the

economic benefit of their estates at the time(s) of their death(s.)

**75.**     The Defendants represented to Ms. Moy, as well as other Shareholder-Tenants living generally at "Southbridge Towers" and specifically to elderly Shareholder-Tenants living at "Southbridge Towers," that their approval of a proposed conversion of the Defendants' Units from "Mitchell-Lama" apartments to private co-operative apartments would create substantial "equity" in their Units, representing a valuable asset to them during their lifetimes and an equally valuable asset to their Estate(s) after their death(s.)

**76.**     Ms. Moy, along with the other "Southbridge Towers" Shareholder-Tenants - and, specifically, the other elderly "Southbridge Towers" Shareholder-Tenants - expressly approved, by her and their Year 2007 vote, conversion of the Defendants' apartments to private co-operative housing because they reasonably relied on the truthfulness and the accuracy of the foregoing representations made to them by the Defendants.

**77.**     Ms. Moy, along with the other "Southbridge Towers" Shareholder-Tenants - and, specifically, the other elderly "Southbridge Towers" Shareholder-Tenants - expressly engaged in affirmative acts, from 2007-2016, at the request of the Defendants, when asked to engage in them for the purpose of the foregoing conversion.

**78.**     Ms. Moy, along with the other "Southbridge Towers" Shareholder-Tenants - and, specifically, the other elderly "Southbridge Towers" Shareholder-Tenants - expressly relied on the good faith and fair dealing of the Defendants in responding to the requests made of her (and of them) 2007-2015/2016.

**79.**     At some unknown time, in 2007-2014, Defendants (excepting Gutman, Mintz) were privately advised that no Agreements for the conversion of "Mitchell-Lama"

shares, signed by elderly Shareholder-Tenants prior to their death(s), would be transferrable as assets of their Estate(s) to their Administrators, Executors, Beneficiaries or Distributees if the conversion approved in 2007 had not been fully made as a matter of law at the time of their death(s.)

80.     The New York State Dept. of Housing & Community Renewal confirmed this private advice by formal letter sent to the Defendants in Dec., 2014.

81.     The Defendants affirmatively concealed, from 2007-2015, both the private advice given to them regarding non-transferrable rights, along with the written advice given to them to the same effect, from Ms. Moy, from their Shareholder-Tenants generally and specifically from their elderly Shareholder-Tenants.

82.     The Co-Defendants, from 2007-2016, instructed Defendant PRC as their Managing Agent and Defendant Gutman, Mintz as their Attorneys to engage in business and legal tactics, designed to create the appearance of a private conversion with all due speed but calculated - instead - to obstruct and delay the conversion for as lengthy a time as possible.

83.     The Co-Defendants so instructed and the Agent-Defendant so agreed to obstruct for the express and implied purposes of insuring that as many elderly Shareholder-Tenants of "Southbridge Towers" as possible would die before the private conversion approved in 2007 could be lawfully consummated.

84.     The Co-Defendants so instructed and the Agent-Defendant thereafter engaged in multiple obstructive acts, designed to have the appearance of furthering conversion, including but not limited to delays in publishing and seeking Approval of a

written Plan for conversion, repetitive and unnecessary multiple Amendments of the Plan for conversion, repetitive and unnecessary votes for approval or disapproval of same, repetitive and duplicative "seminars" for Shareholder-Tenants.

85.     Pursuant to the same instructions and for the same purpose, the Defendants refrained from taking prompt or property steps to reorganize Southbridge by new or amended Articles of Incorporation.

86.     The Defendants so refrained because they had actual and constructive knowledge that - without reorganization - Southbridge would be barred as a matter of law from consummating the private conversion approved in 2007.

87.     The Defendants engaged in the foregoing affirmative and concealed delay tactics as part of a joint "die-off" scheme, intended to force return of the "Mitchell-Lama" Co-Operative Shares owned specifically by elderly Shareholder-Tenants to the Corporation upon the deaths of the elderly Shareholder-Tenants.

88.     Ms. Moy, along with the Mr. Moy as her Distributee, was a specifically targeted elderly person in the Defendants' "die-off" scheme.

89.     The Defendants engaged in, co-ordinated and facilitated their mutual "die-off" scheme for the purpose of enriching themselves - upon the deaths of the maximum number possible of elderly "Southbridge Towers" Shareholder-Tenants - by return of the decedents' Shares to Southbridge and subsequently by sales of the same Shares at full market value to new Shareholder-Tenants who had never resided in the Defendants' complex.

90.     On or about Dec., 2014 or Jan., 2015 the Defendants asked Ms. Moy to sign

a "Participation Agreement" (hereafter, the "Agreement") consenting to the conversion of her "Mitchell-Lama" Shares and Leasehold Rights to private co-operative Shares and Leasehold Rights.

91.     On or about Jan. 2, 2015 Moy had the Participation Agreement signed and returned to the Defendants, together with a cover letter to their General Manager, Jill Zilker.

92.     The Agreement included a line for "Counter-Signature" by the President of Southbridge.

93.     The Defendants drafted the Agreement, and solicited Mr. Moy's signature to it, with multiple "future tense" provisions, calculated to present the Agreement from constituting a valid Contract between the late Ms. Moy and themselves.

94.     The Defendants so drafted and solicited with the express intent of deceiving Ms. Moy into believing that she had entered into a valid Contract for the conversion of her Shares and Leasehold Rights, when the Agreement was expressly designed, drafted and published by the Defendants for the purpose of preventing a valid Contract from being signed or recorded.

95.     The Defendants, after soliciting Mr. Moy's good faith signature as Attorney in Fact for Ms. Moy, refused or failed to counter-sign the Agreement, for the express purpose of preventing the Agreement from becoming a legally valid Contract.

96.     The Defendants so drafted, solicited and refused to counter-sign as part of their continuing "die-off" scheme, to guarantee a maximum number of deaths of elderly Shareholder-Tenants before conversion and thereby guarantee to themselves personal profit

from the return of the decedents' Shares to Southbridge.

**97.**    Mr. Moy reasonably believes, both from statements made to him by the Defendants or their Representatives, from 2007onwards, and from statements made to him or published by other Shareholder-Tenants of "Southbridge Towers" that the Defendants engaged in multiple, identical, acts of drafting, solicitation and refusals to counter-signed as part of their continuing "die-off" scheme against the late Ms. Moy and other elderly Shareholder-Tenants of "Southbridge Towers."

**98.**    The foregoing acts and failures to act, committed and jointly co-ordinated by and among the Defendants, were consciously and expressly calculated to discriminate under color of law against elderly Shareholder-Tenants as a special "class" of Southbridge residents.

**99.**    Ms. Moy died in March, 2015.

**100.**    Mr. Moy has applied for Letters of Administration for the late Ms. Moy's Estate, and that application is presently pending before the Surrogate of New York County.

**101.**    The disposition of the late Ms. Moy's Shares and Leasehold Rights for Unit # 16M (100 Beekman St.) situate Mr. Moy, as Distributee and as Proposed Administrator, in the same "class" of Plaintiffs or potential Plaintiffs as family members, attorneys in fact or potential or actual representative(s) of Estates of every other elderly Shareholder-Tenant of "Southbridge Towers" victimized by the Defendants' "die-off" scheme.

**102.**    By reason of the foregoing, the Plaintiff is entitled to punitive damages against the Defendants together with declaratory relief.

## THE SBI SHARES ALLOCATED TO APARTMENT 16M

**103.**    Twenty-six and one-quarter (26¼) Class B common stock shares of defendant SBI (the "Shares") are currently allocated to the Apartment.

**104.**    The Shares are fully-paid and non-assessable.

**105.**    The Shares are represented by a stock certificate.

**106.**    The Shares are only transferrable on the books and records of defendant SBI by the holder of the shares upon surrender of the certificate representing the Shares properly endorsed.

**BUSINESS DECISIONS OF THE SBI COOPERATIVE**

**107.**    Defendant SBI's By-Laws set forth certain of the rules relating to its corporate affairs.

**108.**    The business decisions and policies of defendant SBI are delegated to its fifteen (15) member Board of Directors by SBI's By-Laws.

**EXECUTION OF BUSINESS DECISIONS**

**MADE BY SBI'S BOARD OF DIRECTORS**

**109.**    Upon information and belief, responsibility for the Plan has been subdelegated by the Board of Directors of defendant SBI to those six (6) directors who are also officers of SBI, and who have been designated and are serving collectively as the "principals of the Sponsor" of the Plan, and who, in that capacity, signed certifications of the Plan's contents (Plan at Pages 386 and 768-69) on March 18, 2014.

**110.**    The day-to-day affairs of defendant SBI are delegated by its Board of Directors to a managing agent.

**111.**    Upon information and belief, defendants PRC MANAGEMENT

CORPORATION and PRC MANAGEMENT COMPANY LLC are affiliated entities.

112. Defendant SBI's managing agent(s) are defendant PRC MANAGEMENT CORPORATION and defendant PRC MANAGEMENT COMPANY LLC.

## DEFENDANT SBI'S APRIL 2014

## RECONSTITUTION COOPERATIVE OFFERING PLAN

113. The sponsor of the Plan is defendant SBI (the "Sponsor").

114. In accordance with applicable law, the Board of Directors of defendant SBI was duly authorized by its shareholders on October 23, 2007 to have drafted and to submit a red herring proposal to the NYS Department of Law for reconstitution of defendant SBI under Section 805 of the NYS Business Corporation Law for the purpose of operating as a private market-rate housing cooperative.

115. A "red herring" preliminary version of the Plan was submitted to the NYS Department of Law on or about June 23, 2009.

116. The proposed plan went through a protracted review and comment period lasting nearly five (5) years.

117. Because defendant SBI is already an operating housing cooperative, the Plan is unlike most other cooperative offering plans because it is not a conversion plan from rental to cooperatively-owned housing, but rather is a reconstitution plan from Mitchell-Lama status into a private cooperative.

118. Defendant SBI's filed Plan for dissolution and reconstitution has been promulgated pursuant to the initiative of SBI's shareholders, and it has been subject to a mandatory vote by, and the approval of 66 2/3s of, the qualified SBI shareholder owned

apartment-units that are entitled to vote (pursuant to applicable rules established by a NYS agency having jurisdiction of public financed housing cooperatives).

**119.**     Defendant SBI's Plan was prepared with the assistance of legal counsel that is highly experienced in the subject matter and which has advised the Plan's Sponsor - i.e., defendant SBI and its designated director/officers - regarding all steps of the process.

**120.**     The final version of the Plan was accepted for filing by the NYS Department of Law on or about April 10, 2014.

**121.**     By a shareholder-unit vote that was held on or abot September 28-30, 2014 shareholder-apartment-units that were entitled to vote.

**122.**     The requisite approval was thereafter certified on or about October 1, 2014.

**123.**     As a result of the shareholder-vote approval, the Plan moved into the next stage, which required the submission of a Plan amendment to the NYS Department of Law which disclosed the certified results of the shareholder vote (known as the "Vote Amendment") to all offerees and the public.

**124.**     The Plan's Vote Amendment was required to be submitted to the NYS Department of Law within thirty (30) days after the vote, or by approximately October 31, 2014.

**125.**     Instead said Amendment was submitted on or about November 24, 2014.

**126.**     An exclusive period of 90-days for SBI shareholders to decide whether to participate in the Plan (the "90-Day Exclusive Participation Period") occurred, in which Ms. Moy submitted a valid and signed Participation Agreement on or about January 2015.

**127.**     Despite this submission, Defendants failed to return an executed copy of the

Participation Agreement to Plaintiffs.

128.   Despite the Plan meeting the requirements for effectiveness, the Plan was not declared effective by Defendants until March 9, 2015.

129.   Despite the plan being declared effective on March 9, 2015, Defendants did not file an amendment declaring the Plan effective until on or about August 31, 2015.

130.   This delay, like many others that occurred during the process, was part of Defendants "die off" plan to allow sufficient time to pass to allow as many sickly and elderly tenants die off before the plan was deemed effective.

131.   Upon the plan being declared effective, Plaintiff had the exclusive right to Exchange Shares allocated to his or her Apartment in for the Shares of the Apartment Corporation allocated to his or her Apartment.

132.   Defendants have denied Plaintiffs these rights to exchange.

133.   Another part of the Plan states, inter alia, as follows (at Page 328):
All Shareholders will have the exclusive right to vote on the Plan of Reconstitution of South bridge Towers, Inc. at a special meeting not less than 30 days nor more than 180 days from the Presentation Date of the Plan. Estates will be excluded from the vote. An amendment to the Plan disclosing the certified results of the vote (the "Vote Amendment") will be submitted to the Department of Law within thirty (30) days of the vote. In the event the vote is in favor of the Plan, for a period of 90 days following the Presentation Date of the Vote Amendment, all shareholders (including those who vote against the Plan of Reconstitution) will have the exclusive right to execute Participation Agreements (the "Exclusive Period") for the Shares allocated to their Apartments. Participation Agreements

are not binding unless countersigned and returned within twenty (20) days. Shareholders

who do not execute Participation Agreements will be presumed to have elected to not

participate and will become a Non-Participating Shareholder. Non-Participating

Shareholders must either vacate their Apartments or remain as rental tenants after the

effective date of the Plan. (Please see the Section of the Plan entitled "Effective Date").

Non-Participating Shareholders will receive a return of their Equity. (Please

also see Special Risks 8 and 9).

If the Plan is abandoned or does not become effective, or, if after being declared effective,

the Plan shall be abandoned under the circumstances described in the section entitled

"Effective Date", Participation Agreements shall be deemed cancelled and the Plan

terminated and Shareholders are to receive back, not later than twenty (20) days thereafter

their Shares of Sponsor and their Occupancy Agreements. Upon such return, no party shall

have any claim against any other party or person, the Sponsor, or the Sponsor's agent, and

any other person who participated in the preparation or presentation of the Plan, and all

parties shall be released from all obligations hereunder.

     **134.**    This section specifically acknowledges that as of the effective date of the

Plan, the Shares of the Sponsor owned by the tenants, in this case Plaintiff, were transferred

to the Sponsor and/or the Sponsor's agents.

     **135.**    Similar language, referencing the transfer of the shares/rights, as of the

effective date, is also found in the Participation agreement itself.

     **136.**    Upon said transfer, on the effective date, Plaintiff had rights to shares in the

Apartment Cooperation, which did not terminate upon death.

**137.**   As a result of the defendants' foregoing and continuing course of conduct, the inevitable inference that must be drawn is that there is a concerted intention on the part of the defendants to impair, thwart and undermine Plaintiff's right.

**138.**   Upon information and belief, the motivation of the defendants to pursue this concerted effort to impair, thwart and undermine Plaintiff's right is largely money motivated.

**139.**   In that regard, the Plan states: "Sponsor [defendant SBI] reserves the right to sell Shares to the public in the future, by amendment to this Plan." (Plan at Page 8)

**140.**   If the defendants are successful in preventing the plaintiff from receiving their shares , the consequence would be defendant SBI being able to sell the Shares allocated to the Apartment in the open market at a later date for a net price that may well exceed the already very large 33% transfer tax that will be imposed by defendant SBI on a sale of the exchanged shares.

**141.**   After the presentation of the Vote Amendment to the SBI shareholders, an SBI shareholder's participation in the Plan involves (A) timely submission of a signed Participation Agreement to the defendants; then (B) countersignature by an SBI officer on SBI's behalf; and then (C) defendant SBI's timely return of the countersigned Participation Agreement to the shareholder.

**142.**   But according to the Plan (at Page 328), if a Participation Agreement is not countersigned AND returned in a timely manner (i.e., within 20 days), then, under the Plan, the Participation Agreement is not binding.

**143.**   Many of the Plan's critical steps in the "participation process" by the

shareholders are largely controlled by defendant SBI and its Director/Officer/Sponsor-principal co-defendants (defendants DIMSON, NEBELSCHAINHOLZ, GUGGENHEIM, BROWN, OST and KEFER).

**144.**    Because the processing of a shareholder's submitted Participation Agreement is time-sensitive under the Plan, and because a submitted Participation Agreement is solely within the control of the SBI-related defendants, the reality is that the SBI-related defendants are in a position to stall or impede the processing of a shareholder's Participation Agreement and possibly render it invalid or challengeable in some manner, or be arguably invalid in some manner, thereby subjecting its processing and the shareholder to costly delays and uncertainty.

**145.**    The Plan's specified procedure to effectively participate in the Plan is therefore vulnerable to abuse and manipulation by the defendants to the detriment of plaintiff and other similarly situated plaintiffs.

**146.**    Based upon this combination of control and motive, which is coupled with a course of actual and persistent hostile conduct toward the plaintiff by the defendants collectively during the pendency of the Plan to date, there is a genuine and imminent threat to plaintiff's interests and rights as an shareholder.

<u>**INCIDENTAL FACTS RELATING TO**</u>

<u>**APARTMENT 16M'S SHARES' OWNERSHIP**</u>

**147.**    Upon information and belief, for over thirty years, the Cooperative sent monthly bills to the Moys for maintenance and related occupancy charges, all of which were paid timely each month.

148.     Even after the death of Ms. Moy, the Cooperative continued to send monthly bills addressed to Ms. Moy for maintenance and A/C charges.

149.     Said bills were paid.

## DEFENDANTS ARE ESTOPPEL FROM DENYING PLAINTIFFS' RIGHTS IN THE SHARES IN THE APARTMENT COOPERATIVE

150.     The Defendants are likely to take the position that the final, absolutely final, date of the approval of the plan, and all the final dates took place on September 10, 2015, or later, when SBI no longer a Mitchell Lama apartment building.

151.     Even then the Defendants arguments would fail because it is over 2.5 years or over 30 months that Defendants did not affirmatively take legal in action to support or affirm their position that Ms. Moy and the estate of Ms.Moy is the not legal owner of the Apartment.

152.     If this is the case, defendants should be estopped, and should be deemed to have unclean hands, for their scheme to profit from denying Plaintiff's right to Plaintiff's ownership of the Apartment.

153.     Additionally, on or about August 18, 2015, in the 6th Amendment to the Plan, Defendants affirmatively represented that Plaintiff's apartment was one of the apartments who was participating in the Plan, the participation was effective, and that the Participation Agreement was fully signed as of January 7, 2015.

154.     This affirmative representation by Defendants, well after the date of Ms. Moy's death, of Plaintiffs current and active participation, estops Defendants from taking a contrary position that Plaintiffs are not participating in the plan.

155.     Defendants can not give representations such that of the August 2015 representation and at the same time deny Plaintiff's rights as owners of the Unit 16M as shareholders.

156.     To allow otherwise would be for the Court to allow the Defendants to arbitrary and capriciously alternate their positions, contrary to representations Defendants have already given to various governmental agencies.

157.     The Defendants SBI by their President and Board not only did not cancel the Participation Agreement that the late Ms. Moy signed but in sworn statement affirmed it as evidence of the Plan proceeding.

158.     The Defendants Southbridge knew about Ms. Moy's passing on March 11, 2015.

159.     Thus 5 months later, the Defendants undeniably affirmed that the late Ms. Moy and her estate are the rightful owners of the apartment and participation in the Plan.

160.     Further, clearly distinguished from all prior cases, Ms. Moy was the legal shareholder of record with respect to unit 16m as of the date the plan was declared effective.

161.     The Defendants will likely argue otherwise and aver that Ms. Moy is not entitled to the ownership of unit 16m, however, the defendants must concede to the critical facts that Ms. Moy was the legal shareholder of record with respect to unit 16m as of the date of the plan filing date (on or about April 10 , 2014) and the date the plan was declared effective (on March 9, 2015).

162.     The Defendant SBI by its president Wallace Dimson, pursuant to a sworn

statement on august 18, 2015, stated that Ms. Moy's vote was counted for the purposes of declaring the plan effective, and that Ms. Moy was a shareholder.

## FIRST CAUSE OF ACTION

### [ Declaratory Judgment Relief re Right to Participate ]

**163.**     Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

**164.**     A justiciable controversy exists regarding whether Plaintiff has the right to shares in the Apartment Cooperative.

**165.**      As an Participating Shareholder, who timely returned the Participation Agreement, and who effectively exchanged shares and rights as of the date the plan was deemed effective, March 9, 2015, the plaintiff is entitled to shares in the Apartment Cooperative pursuant to a Participation Agreement.

**166.**     The plaintiff cannot control either (i) the timing relating to the Plan's administration and consummation, or (ii) the process for completing the obligations of a Participating Shareholder; but such timing considerations are completely within the control of the SBI-related defendants (subject only to compliance requirements of applicable law).

**167.**     The plaintiff is entitled to shares in the Apartment Cooperative Plan in a manner that is free from harassment and discrimination.

**168.**     As such Plaintiffs' are entitled to a declaratory judgment ordering Defendants to provide Plaintiffs with shares in the Apartment Cooperative as Plaintiff's were entitled to under the Plan.

## SECOND CAUSE OF ACTION

## [ Declaratory Judgment Relief re Executor's Right of Access to the Apartment Appurtenant to the Shares ]

**169.**    Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

**170.**    A justiciable controversy exists regarding whether plaintiff Daniel Moy, as Executor of the Estate of Kam Kiu Moy, is entitled to have access to the Apartment as needed from time to time for purposes of administering the Estate.

**171.**    The Apartment remains furnished and still contains most of the personal effects of decedent Kam Kiu Moy, all of which personalty are assets of the Estate.

**172.**    Provided that all monthly maintenance / rent, air-conditioning and appliance fees are paid timely each month, plaintiff Daniel Moy as Executor of the Estate of Kam Kiu Moy (and her representatives) should be permitted access to the Apartment for purposes of administering the Estate and its assets in a manner that is free from harassment and discrimination.

**173.**    As such Plaintiffs' are entitled to a declaratory judgment ordering Defendants to provide Plaintiffs with access to the Apartment for purposes of administering the Estate and its assets in a manner that is free from harassment and discrimination.

**THIRD CAUSE OF ACTION**

**[ Breach of Contract, Breach of Fiduciary Duties, Monetary Damages ]**

**174.**     Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully

set forth herein at length.

**175.**     If Plaintiff is denied or unfairly intimidated into a loss of its rights to shares

in the Apartment Cooperative, as described in the Plan, as a result of the foregoing breaches

of the Plan's contractual offering and/or breaches of fiduciary duty by the SBI-related

defendants, then the plaintiff will suffer loss and monetary damages as a result of such

breaches.

**176.**     The loss and monetary damages will exceed $150,000 in value.

**177.**     Plaintiff is entitled compensation from Defendants in the form of actual

damages as well as punitive damages to be determined at trial.

**178.**     Said actual damages should be equal to the value of the shares of the

apartment in the Apartment Cooperative.

**FOURTH CAUSE OF ACTION**

**[ Martin Act Fraud, and Reference to the NYS Attorney General's**

**Enforcement Division for Criminal and Civil Enforcement and Prosecution ]**

**179.**     Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully

set forth herein at length.

**180.**     In light of the plain and unambiguous language of the Plan that it is an

offering made to SBI-shareholders of record on April 10, 2014, if the plaintiff 's right to

participate in the Plan is in any way challenged in this action by the defendants, then the

Court should refer this matter and particularly defendant SBI and all of the SBI related director-officer defendants - i.e., the Plan's Sponsor and the Sponsor's principals (DIMSON, NEBEL-SCHAINHOLZ, GUGGENHEIM, BROWN, OST and KEFER) - to the NYS Department of Law's Enforcement Division for criminal and/or civil prosecution based on knowing violations of the Martin Act, based on, among other things, said defendants engaging in improper, fraudulent, deceptive and discriminatory practices in connection with a public offering of securities in the State of New York and for filing materially false certifications.

## FIFTH CAUSE OF ACTION

### [ Punitive Damages ]

**181.**    Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

**182.**    In light of the plain and unambiguous language of the Plan that it is an offering made to SBI-shareholders of record on April 10, 2014, if the plaintiff s right to the shares of Apartment Cooperative, as detailed in the Plan, is in any way challenged in this action by the defendants, then the acts and practices of the SBI-related defendants - who have fiduciary duties attendant to their offices and their positions of power in the administration of an enterprise involving New York State agencies and laws, and who are acting in conjunction with their sponsored offering of securities in New York State - are a danger and an affront to the public interests of the citizens of New York State.

**183.**    The imposition of punitive damages on the defendants is an appropriate deterrent to curb such abuses of public-derived powers and obligations.

## SIXTH CAUSE OF ACTION

**184.**     Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

**185.**     The acts and the failures to act of the Defendants, itemized above, constituted and continue to constitute breaches of state and federal constitutional law, inclusive of but not limited to 42 USC 1983, prohibiting discrimination against elderly persons, as members of a "minority" group, under color of law.

**186.**     Defendants will likely argue that the DHCR rules and regulations have requirements which have not been met resulting in a determination that the late Ms. Moy is not an owner of the Apartment.

**187.**     However, the Courts have previously rejected DHCR interpretation of the rules.

**188.**     In fact the rules and regulations of the DHCR that Defendants will likely rely upon have been recently amended.  However the facts remains that the late Ms. Moy took all actions necessary to be a shareholder of Southbridge Towers and participated in the reconstitution.

**189.**     To further perpetrate the Defendant's scheme to defraud the Plaintiff, Defendants continued to accept all maintenance and all fees from the late Ms. Moy and had no intention of inform any individuals on the waiting list of whether the late Ms. Moy is a shareholder of SBI.  Their intention is clear as Defendants would profit by their actions/inactions.

**190.**     Upon information and belief, even after learning of the late Ms. Moy's death

the Defendants took no action to notify individuals on the waiting list of such person's rights, if any.

191.    Upon information and belief, the Defendants did not comply with 1750.11 of the DHCR as Defendants failed to "...at least 60 days prior to the effective date of dissolution, the housing company shall submit an affidavit to the [commissioner] division certifying that each person on the waiting list for apartments in the housing development has been advised in writing of the proposed dissolution and whether or not the waiting list will continue to be utilized."

192.    Defendants intentions are clear; the Defendants wish to profit from their scheme to take and deny the shares that are entitled to the late Ms. Moy.

193.    By reason of the foregoing, the Plaintiff is entitled to punitive damages against the Defendants – together with the costs, disbursements and reasonable attorney's fees for this action, plus interest – in sums exceeding the jurisdiction of all lower courts, calculated at three times the amount(s) awarded by the Jury, together with a Judgment declaring the Jan., 2015 Agreement signed by the Plaintiff to constitute a valid and binding contract between the Defendants and the Plaintiff for delivery of converted Shares and Leasehold Rights to the Apartment to him, when the conversion approved in 2007 is finally consummated as a matter of law.

## SEVENTH CAUSE OF ACTION

194.    Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

195.    At all times complained of herein, the Defendants had a prior contractual

relationship with Ms. Moy, based upon their and her signatures to the original "Mitchell-Lama" purchase(s) of Shares and Leasehold Rights for the Apartment.

196.    At the time of said signatures the Defendants or their Predecessor(s) in Interest made express and implied warranties to Ms. Moy (or to her Predecessor/s in Interest) that they would perform upon the terms of their contract in good faith and by fair dealing.

197.    Ms. Moy, by her own acts and by those of Mr. Moy as her Attorney in Fact, fully performed in good faith and by fair dealing upon the terms of same, when they co-operated with all acts requested of them by the Defendants for the apparent purpose of converting "Southbridge Towers" from a "Mitchell-Lama" housing co-operative to a private housing co-operative.

198.    The Defendants' acts and failures to act, during 2007-2016, itemized above, constituted and continue to constitute multiple acts of bad faith and unfair dealing on their part, calculated to conceal their joint "die-off" scheme from the late Ms. Moy, Mr. Moy and every other elderly Shareholder-Tenant or successor to elderly Shareholder-Tenant similarly situated.

199.    By reason of same, Plaintiff  is entitled to punitive damages against the Defendants in sums, together with a Judgment declaring the Jan., 2015 Agreement signed by the Plaintiff to constitute a valid and binding contract between the Defendants and the Plaintiff for delivery of converted Shares and Leasehold Rights to Unit # 16M .

## EIGHTH CAUSE OF ACTION

200.    Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully

set forth herein at length.

 **201.** The acts and the failures to act of the Defendants, itemized above, constituted and continue to constitute breaches of state law, inclusive of but not limited to New York State Humans Right Law §290, §291, §296 (2-a) (b), §296 (5) (a)(2), §296 (5) (b)(2), §296 (9), §296 (10) prohibiting discrimination against individuals based upon age and/or disability and/or assisting with the discrimination based upon age and/or disability.

 **202.** The Defendants' acts and failures to act, during 2007-2016, itemized above, constituted and continue to constitute multiple acts of bad faith and unfair dealing on their part, and discrimination, calculated to conceal their joint "die-off" scheme from the late Ms. Moy, Mr. Moy and every other elderly Shareholder-Tenant or successor to elderly Shareholder-Tenant similarly situated.

 **203.** By reason of the foregoing, the Plaintiff is entitled to punitive damages against the Defendants – together with the costs, disbursements and reasonable attorney's fees for this action, plus interest , together with a Judgment declaring the Jan., 2015 Agreement signed by the Plaintiff to constitute a valid and binding contract between the Defendants and the Plaintiff for delivery of converted Shares and Leasehold Rights to Unit # 16M to him, when the conversion approved in 2007 is finally consummated as a matter of law

**NINTH CAUSE OF ACTION**

 **204.** Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

 **205.** Plaintiff had a right to lawful property, which had monetary value,

fraudulently and unjustly taken from them by Defendant.

206.    Accordingly Defendant has bestowed upon themselves benefits for which they are not entitled through the keeping/taking of the Shares and Leasehold Rights of Plaintiffs.

207.    The enrichment was at the Plaintiff's expense. Plaintiff did not receive payment, consideration or remunerations for the Shares and Leasehold Rights

208.    The circumstances are such that equity and good conscience require the Defendants to make restitution.

209.    The retention of Plaintiff's property by Defendant would be unjust and against the interest of justice.

210.    By reason of the foregoing, Plaintiff is entitled to money damages in the amount to be determined at trial, plus costs, interest, and legal fees, plus punitive damages in the amount to be determined by the court.

## <u>TENTH CAUSE OF ACTION</u>

211.    Plaintiffs repeat and re-allege all the previous paragraphs as if they are fully set forth herein at length.

212.    Plaintiff had a fiduciary relationship with Defendants founded upon trust and confidence wherein integrity and fidelity was owed to Plaintiff from Defendants based upon the parties relationship with the Premise, Shares and Leasehold Rights.

213.    Defendants took advantage of their position and dominion over the process of conversion by solely acting in their own interest rather than the joint interest of Plaintiff, and those similarly situated.

214.    Defendants' misconduct has caused a conflict of interest.

215.    Defendants' misconduct has injured Plaintiff.

216.    Defendants are aware of their tortious misconduct.

217.    Defendants' actions are contrary to the interests of Plaintiff and those similarly situated.

218.    Defendants' misconduct directly causes damages to Plaintiff.

219.    By reason of the foregoing, Plaintiff is entitled to money damages in the amount to be determined at trial, plus costs, interest, and legal fees, plus punitive damages in the amount to be determined by the court.

## RESERVATION OF RIGHTS

220.    Mr. Moy reserves his rights to add to this action such other Defendants whose names or identities come to light during discovery or trial of this action.

221.    Mr. Moy reserves his rights to convert this action to a "class" action at such time as the names or identities of other Plaintiffs, similarly situated, come to light during discovery or trial of this action.

## DEMAND FOR JURY TRIAL

222.    Defendants demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Moy demands judgment against the Defendants, as detailed in the above causes of actions for: declaratory judgments, monetary damages, punitive damages, costs, legal fees,

together with the costs, disbursements and reasonable attorney's fees of this action, plus interest:

        Dated: New York, NY
              March 9, 2018

                                Respectfully submitted,

                                /s/_____
                                Vincent S. Wong, Esq. (VW9016)
                                Law Offices of Vincent S. Wong
                                39 East Broadway, Suite 306
                                New York, NY 10002
                                T: (212) 349-6099
                                F: (212) 349-6599
                                *Attorneys for the Plaintiffs*